## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

**Brenda Sue Jackson**                                                                            **Plaintiff**

**v.**                                               **No. 4:14-CV–53-BSM-JTR**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                                   **Defendant**

### Recommended Disposition

### Instructions

    The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

### Reasoning for Recommended Disposition

    Brenda Sue Jackson seeks judicial review of the denial of her application for social security disability benefits.[1] Jackson last worked as a cook and certified nurse's

---

[1]SSA record at pp. 101 & 108 (applying on June 17, 2011 and alleging disability beginning Nov. 1, 2009).

aid for an assisted living facility.[2] She says she quit her job due to pain.[3] After her unemployment benefits ceased,[4] Jackson applied for disability benefits. She based disability on Lyme disease, gout, arthritis, and depression.[5]

**The Commissioner's decision**. The Commissioner's ALJ identified myalgias/myositis as severe impairments,[6] but determined Jackson can still work as a cook and certified nurse's aid.[7] Because a person who can do her past work is not disabled under social security law,[8] the ALJ determined Jackson is not disabled and denied the application.[9]

---

[2]*Id*. at pp. 117, 131 & 136.

[3]*Id*. at p. 37 (stating that it hurt to lift the pans into and out of the oven), p. 130 (explaining that new management thought she made too much money and began to pile on more work than she could handle), p. 268 (telling VA rep that pain caused her to stop working), p. 428 (reporting that she quit due to physical issues) & p. 437 (she quit her last job due to hip pain because she had to walk up/down stairs).

[4]*Id*. at p. 123 (reflecting unemployment benefit trough first quarter of 2011) & p. 264 (reporting in August 2010 that she had received unemployment since Nov. 2009).

[5]*Id*. at p. 129.

[6]*Id*. at p. 10.

[7]*Id*. at p. 18.

[8]20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("If you can still do your past relevant work, we will find that you are not disabled.").

[9]SSA record at pp. 18-19.

After the Appeals Council denied review,[10] the ALJ's decision became the Commissioner's final decision for the purpose of judicial review.[11] Jackson filed this case to challenge the decision.[12] In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[13] This recommendation identifies legal errors undermining the decision and recommends remanding this case for a new proceeding.

**Jackson's allegations**. Jackson challenges the determination that she can do her past work. She claims mental impairment, headaches, gout, eye injury, arthritis, postural limitations, and a need for extra time to complete tasks, prevent her from working. She contends the ALJ over-stated her daily activities. She says the ALJ should have adopted the limitations reported by the consultative examiners because

---

[10]*Id*. at p. 1.

[11]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[12]Docket entry # 1.

[13]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

the ALJ gave the examiners' opinions significant weight. She maintains the vocational expert didn't consider of all of her limitations or the demands of her past work. For these reasons, she argues, substantial evidence does not support the ALJ's decision.[14]

**Governing legal principles**. In reviewing a decision denying an application for disability benefits, the court must determine whether the decision is supported by substantial evidence in the record as a whole.[15] Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate to support the decision.[16] When reviewing for substantial evidence, the court must consider all of the evidence — including evidence detracting from the ALJ's decision[17] — but the court may not reverse a decision simply because substantial evidence supports an opposite conclusion.[18] A substantial-evidence review is not mere "rubber stamp" of the decision; review requires a scrutinizing analysis.[19]

**The ALJ erred at step two**. Step two of the disability-determination process

---

[14]Docket entry # 12.

[15]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).

[16]*Slusser*, 557 F.3d at 925.

[17]*Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004).

[18]*Slusser*, 557 F.3d at 925; *Sultan*, 368 F.3d at 863.

[19]*Scott o/b/o A.S. v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008); *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989).

requires the claimant to show she has a severe medically determinable physical or mental impairment.[20] If the claimant has no severe impairment, the process ends because the claimant is not disabled. To be severe, an impairment must significantly limit the claimant's physical or mental ability to do basic work activities.[21]

The ALJ identified myalgia/myositis as severe impairments, but myalgia and myositis are not medically determinable impairments. Myalgia — muscle pain or aching — and myositis — muscle inflammation — are symptoms[22] of an underlying impairment, *not* a medically determinable physical or mental impairment.[23]

---

[20]20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii).

[21]*See* 20 C.F.R. §§ 404.1520(c) & 416.920(c) (explaining that claimant is not disabled if she does not "have any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities").

[22]*See* Stedman's Med. Dictionary (27th ed.) (defining myalgia as muscular pain and myositis as muscle inflammation); 4 Attorneys' Dictionary of Med. 79244(defining myalgia as pain in a muscle or in several muscles); 1-6 Lawyers' Med. Cyclopedia § 6.16 (indicating myositis is inflammation of the muscles). There is a rare disease called myositis — affecting one in 10 million people — but a diagnosis requires diagnostic testing to rule out other conditions that can affect muscles. Judith Sims, 4 The Gale Encyclopedia of Med. 3003-04 (4th ed.). Jackson has not undergone such testing.

[23]"A 'symptom' is not a 'medically determinable physical or mental impairment'… no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." SSR 96-4p, *Pol'y Interpretation Ruling Titles II & XVI: Symptoms, Medically Determinable Physical & Mental Impairments, & Exertional & Nonexertional Limitations*.

The identification of myalgia/myositis as severe impairments appears to have flowed from a consultative physician's examination of Jackson and her medical records, which reflected her diagnosis of myalgia/myositis.[24]   The consultative physician's report indicated Jackson's report of joint pain[25] and one negative medical finding: tenderness on palpation in the hips.[26] The ALJ appears to have then adopted the consultative physician's notation of "myalgia/mytosis" as a severe impairment.

By proceeding to step 3, the ALJ must have believed that Jackson had established that she suffered from one or more medically determinable physical or mental impairments. However, he failed to identify *any* severe impairments in his step 2 analysis, which created a hopelessly muddled picture in trying to understand the remainder of his analysis.

**The ALJ's decision also reflects a step-four error**. At step four, the ALJ considered whether Jackson could perform her past work. If she can do her past work, she is not disabled under social security law.[27] Determining whether Jackson can do

---

[24]SSA record at p. 437-439.

[25]*Id*. at p. 437.

[26]*Id*. at p. 438.

[27]20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

her past work requires the ALJ to evaluate her credibility,[28] and then to determine her residual functional capacity.[29] The second part of the process requires the ALJ to resolve conflicts in the evidence, which in this case included conflicts among the medical opinions of various treating, consultative, and reviewing physicians.[30]

Reviewing physicians, who only reviewed Jackson's medical records, opined that she can do "medium" work.[31] However, a consultative physician, who reviewed Jackson's medical records *and examined her*, opined that Jackson can do "light" work involving occasional climbing, balancing, kneeling, crouching and crawling.[32] The difference between "medium" work and "light" work and postural limitations creates a conflict in the medical opinion evidence.

---

[28]*Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005).

[29]*McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) ("A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence.").

[30]*Dipple v. Astrue*, 601 F.3d 833, 836 (8th Cir. 2010) ("It was the ALJ's task to resolve the differences between these consultative evaluations in the light of the objective evidence."); *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians.…The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.").

[31]SSA record at pp. 307 & 414.

[32]*Id*. at pp. 441-42.

The ALJ resolved the conflict in favor of the reviewing physicians' opinions. The ALJ gave the consultative physician's opinions "significant" weight, reasoning that he "reviewed the medical records and thoroughly examined the claimant and his opinions are supported by and are consistent with the medical evidence of record."[33] The ALJ then gave the reviewing physicians' opinions "great" weight, reasoning that "[a]lthough these consultants did not directly examine the claimant, they provided specific reasons to support their assessments based on information in the case record and they have expertise in their fields."[34] Based on the record in this case, the ALJ's reasoning is an insufficient basis for "great" weight.

The ALJ's first reason — "they provided specific reasons to support their assessments" — is an insufficient basis for "great" weight because the reviewing physicians identified mild osteoarthritis in the knees as the only reason for medium work.[35] In contrast, the consultative physician provided a detailed examination report, including range of motion findings. The second reason — "they have expertise in their fields" — is an insufficient basis for "great" weight because the reviewing physicians are a family practice doctor and an internist. In contrast, the consultative physician is

---

[33]*Id*. at p. 16.

[34]*Id*. at p. 17.

[35]*Id*. at p. 307.

a physical medicine rehabilitation specialist, a doctor specializing in the parts of the body that help a person move. Jackson's complaint — pain with movement — implicates the consultative physician's speciality, not the reviewing physicians' specialities.

The consultative physician's opinion was entitled to greater weight than the reviewing physicians' opinions because: (1) the opinion relates to medical issues within the speciality,[36] (2) the opinion flowed from a detailed physical examination,[37] (3) the opinion is consistent with the record as a whole, and (4) the opinion is consistent with medical literature about the "safe and dependable" lifting load for a person of Jackson's age and gender.[38]

---

[36] 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5) ("We give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). *See Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) ("The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

[37] *Charles v. Barnhart*, 375 F.3d 777, 783 (8th Cir. 2004) ("Generally, if a consulting physician examines a claimant only once, his or her opinion is not considered substantial evidence, especially if the treating physician contradicts the consulting physician's opinion."); *Woodard v. Schweiker*, 668 F.2d 370, 374 (8th Cir. 1981) (citation omitted) ("[T]he written reports of medical advisors who have not personally examined the claimant 'deserve little weight in the overall evaluation of disability. The advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant.'").

[38] Leonard N. Matheson, Joe Verna, Thomas E. Dreisinger, Scott Leggett & John Mayer, *Age and gender normative data for lift capacity* (Oct. 2014).

Notably, the vocational expert classified Jackson's past work as medium work and explained that Jackson's cooking skills transfer to light work as a short order cook.[39] That testimony provided the ALJ with vocational evidence about available light work, but no one asked the vocational expert about postural limitations because the consultative examination had not yet occurred. Giving the reviewing physicians' opinions more weight than the consultative physician's opinion suggests the ALJ's desire to avoid updating the vocational evidence, because conforming the residual-functional-capacity determination to the existing vocational evidence eliminated the need for updated vocational evidence.

While the evidence suggests that Jackson may be able to do light work, involving occasional climbing, balancing, kneeling, crouching and crawling, there is no vocational evidence supporting that supposition.[40]

## Conclusion and Recommendation

For the foregoing reasons, the Court concludes that the ALJ's decision is not supported by substantial evidence. On remand, the ALJ should update the medical

---

[39]SSA record at pp. 29-30.

[40]*Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) ("The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole. Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits.").

record, properly identify any "severe" impairments at step 2, and ensure that he adequately weighs the opinions of the medical and vocational experts. The Commissioner's decision is reversed and this matter is remanded to the Commissioner for further proceedings pursuant to "sentence four," within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

Dated this 28th  day of July, 2015.

_____
United States Magistrate Judge